## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **VISION HOLDINGS, LLC, et al.,** | Civ. No. 2:13-7366 |
| **Plaintiffs,** | (KM)(MAH) |
| **v.** | |
| **Gregory R. ZAPPALA,** | **OPINION & ORDER** |
| **Defendant.** | |

**KEVIN MCNULTY, U.S.D.J.:**

On June 30, 2014, Magistrate Judge Michael A. Hammer granted the motion of the defendant, Gregory R. Zappala, to transfer venue of this action to the Middle District of Pennsylvania pursuant to 28 U.S.C. § 1404. (*See* Order, ECF No. 41; Transcript of Oral Opinion ("Op."), ECF No. 45-5) The plaintiffs, Vision Holdings, LLC ("Vision") and Robert J. Powell, have appealed that ruling to this Court. (ECF No. 45) For the reasons expressed in Magistrate Judge Hammer's well-reasoned Opinion, as well as those set forth below, the appeal is **DENIED**.

### I.     BACKGROUND

Vision is a Pennsylvania corporation with a principal place of business in Hazle Township, Pennsylvania. (Compl. ¶9, ECF No. 1). Powell, a managing member of Vision, is a citizen of Florida. (*Id.* ¶10). Zappala, who is the president and principal shareholder of Consulting Innovations and Services, Inc. ("Consulting"), is a citizen of New Jersey. (*Id.* ¶¶4, 11).

The relevant facts stem from a case of judicial corruption. Powell

and Zappala built and operated juvenile detention facilities in
Pennsylvania, facilities which continue to operate today. (*Id.* ¶1). Between
2004 and 2006, Powell "made about a dozen payments . . . totaling
several hundred thousand dollars" to Michael Conahan and Mark
Ciavarella, who were then Judges of the Court of Common Pleas of
Luzerne County. (*Id.* ¶2). In return for such payments, Ciavarella ordered
juveniles incarcerated. (Def. Opp. Br. 5, ECF No. 46 (citing *Wallace v.
Powell*, Civ. A. No. 3:09-cv-286, 2012 WL 2590150 (M.D. Pa. July 3,
2012); *Wallace v. Powell*, 2010 WL 3398995 (M.D. Pa. Aug. 24, 2010)).
Powell did not inform Zappala of these payments until 2007, when the
judges became subjects of a federal criminal investigation. (Compl. ¶¶2–
3). As a result of the investigation, Powell and the two judges were
convicted and sentenced in the United States District Court for the
Middle District of Pennsylvania. (Def. Opp. Br. 5–6).

In 2008, Zappala and Powell allegedly entered into an agreement
with respect to the juvenile detention facility business. (*Id.* ¶4). Zappala
allegedly promised to attempt to sell the business and share the proceeds
with Powell, "or—if efforts to sell the business were fruitless for a period
of time—obtain an appraisal of the business and pay [] Powell his share
of its appraised value." (*Id.*). Zappala allegedly "made these promises on
behalf of himself and Consulting." (*Id.*). The negotiation of the agreement
occurred in Pennsylvania. (Def. Transfer Mot., Schur Decl. Ex. 1 (Brucker
Decl.) ¶3, ECF No. 11-3). The agreement contains a choice of law
provision specifying that is it to be interpreted under Pennsylvania law.
(Def. Transfer Mot. 1, ECF No. 11-1).

Powell and Vision allege that Zappala and Consulting did not
comply with the terms of the agreement and "never had any intention of
complying with the promises by which they induced Vision and [] Powell
to part with their interests in the business." (*Id.* ¶¶7–8). Specifically,
Powell and Vision allege that Zappala and Consulting neither attempted

to sell the business nor made the agreed payments. (*Id.* ¶7). These and other actions allegedly fraudulently induced Powell, who was then in "distress," to enter into the agreement. (*Id.* ¶¶15–70).

The Complaint, filed on December 6, 2013, alleges two causes of action: (1) common law fraud; (2) aiding and abetting fraud. Jurisdiction is premised on diversity of citizenship. (*Id.* ¶ 13)

Zappala moved to transfer venue to the Middle District of Pennsylvania (ECF No. 11), to dismiss the complaint (ECF No. 10), and to stay proceedings (ECF No. 12). On June 30, 2014, Magistrate Judge Hammer heard oral argument on those motions. (*See* Transcript, ECF No. 45-6) On July 8, 2014, Judge Hammer dictated into the record an oral opinion in which he granted the motion to transfer venue and denied the remaining motions as moot. (*See* Order, ECF No. 41; Op., ECF No. 45-5).

Powell and Vision now appeal the Order. (ECF No. 45).

## II.  DISCUSSION
### a. Standard of Review

The standard of review of a Magistrate Judge's report and recommendation as to dispositive matters is *de novo*. As to a non-dispositive ruling, however, review is more deferential. Pursuant to Federal Rule of Civil Procedure 72(a), "a district court may reverse a magistrate judge's determination of a non-dispositive motion only if it is 'clearly erroneous or contrary to law.'" *See also* 28 U.S.C. § 636; L. Civ. R. 72.1(c)(1)(A); *Haines v. Liggett Group*, 975 F.2d 81, 92 (3d Cir. 1992); *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1113 (3d Cir. 1986). Moreover, as to a "discretionary matter . . . courts in this district have determined that the clearly erroneous standard implicitly becomes an abuse of discretion standard." *Halsey v. Pfeiffer*, No. 09-1138, 2010 WL 3735702, at *1 (D.N.J. Sept. 17, 2010) (internal quotations and citation

omitted); *see also Cooper Hospital/Univ. Med. Ctr. v. Sullivan*, 183 F.R.D. 119, 127 (D.N.J. 1998); *Kresefky v. Panasonic Commc'ns & Sys. Co.*, 169 F.R.D. 54, 64 (D.N.J. 1996). An order transferring venue under 28 U.S.C. § 1404 has been held to be non-dispositive, and hence subject to the more deferential standard. *See Security Police and Fire Prof'ls v. Pfizer, Inc.*, 2011 WL 5080803 at *3 (D.N.J. Oct. 25, 2011); *Stephen L. LaFrance Pharmacy, Inc. v. Unimed Pharm., Inc.*, 2009 WL 3230206 (D.N.J. Sept. 30, 2009).

Ultimately, however, the standard of review matters little. I have carefully reviewed Magistrate Judge Hammer's thorough opinion (Op., ECF No. 45-5), and find myself in agreement with it. Even reviewing the decision *de novo* as a report and recommendation, I would adopt and affirm it.

### b. Review of Judge Hammer's Order

"For the convenience of parties and witnesses, in the interest of justice, a . . . court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The United States Court of Appeals for the Third Circuit, as well as courts within this Circuit considering motions for permissive transfer, have been guided by a number of non-exclusive public and private interest factors:

> The private interests have included: plaintiff's forum preference as manifested in the original choice, whether the claim arose elsewhere, the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora, and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

> The public interests have included: the
> enforceability of the judgment; practical
> considerations that could make the trial easy,
> expeditious, or inexpensive; the relative
> administrative difficulty in the two fora resulting
> from court congestion, the local interest in
> deciding local controversies at home; the public
> policies of the fora, and the familiarity of the
> trial judge with the applicable state law in
> diversity cases.

*Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879–80 (3d Cir. 1995).

First, Judge Hammer concluded, and the parties do not seem to dispute, that Powell and Vision could have brought this action in the Middle District of Pennsylvania. Venue would be proper in that district, because a substantial part of the events giving rise to the claim occurred there. (Op. 8-9[1]); *see* 28 U.S.C. §§ 1332, 1391(b). Specifically, Judge Hammer noted that (1) the background of all the events is that Powell "made and laundered millions of dollars of clandestine payments to Michael Conahan and Mark Ciavarella, who were then judges of the Court of Common Pleas of Luzerne County in Pennsylvania"; and (2) "the agreement that is the source of the dispute between the parties was negotiated in Pennsylvania and contains a choice of law provision requiring the application of Pennsylvania law." (Op. 8:3–6, 8:16–19). Although the action is brought as one for common-law fraud (not breach of contract), the agreement is absolutely central to plaintiff's case.

Second, Judge Hammer properly reasoned that the balance of public and private factors favored the transfer. Specifically, Judge Hammer found that the following factors weighed in favor of the transfer: (1) the defendant's preference; (2) where the claim arose; (3) the convenience of the parties and witnesses; (4) the practical consideration of local interest in public policies; and (5) the Middle District of

---

[1]     Opinion page citations are to the transcript page numbers. The ECF docket page numbers are one digit higher.

Pennsylvania's greater familiarity with Pennsylvania law, which would likely apply to the case. (*Id.* 11:9–11; 11:24–25; 15:15–17; 17:18–18:7; 18:8–20:22).

In their appeal, Powell and Vision gainsay nearly every aspect of Judge Hammer's discretionary analysis. They argue that (1) more deference should have been given to their choice of forum; (2) Zappala's preference to litigate in the Middle District of Pennsylvania deserves no weight; (3) their claims arose in this District; (4) the Middle District of Pennsylvania is no more convenient for potential witnesses and parties; (5) the transfer will not materially improve access to documents needed for trial; and (6) no public interest factor supports the transfer.

*Plaintiff's preference.* Judge Hammer gave due consideration to plaintiff's preference, but properly and permissibly opted not to give it controlling weight. Citing appropriate case law, he noted that plaintiff had selected a forum that is not his home state, and that "the dispute at the heart of the lawsuit occurred almost entirely in another state." (Op. 9:23–10:5 (citing *Piper Aircraft Company v. Reyno*, 454 U.S. 235, 255–56 (1981); *Santi v. Nat'l Bus. Records Mgmt., LLC*, 722 F. Supp. 2d 602, 607 (D.N.J. 2010))). Judge Hammer convincingly distinguished the cases cited by plaintiffs, and I agree with his analysis. In short, his conclusions on this point are well within the bounds of established law.

Plaintiff's preference here deserves some weight, but it is not backed by sufficiently significant ties to New Jersey. Powell and Vision suggest inferences that Zappala made fraudulent statements while on the telephone in New Jersey, that one meeting between the parties occurred in New Jersey, and that Zappala faxed a copy of the agreement from New Jersey. They further attempt to bolster this analysis with

supplemental discovery material.[2] As to these contentions, Judge Hammer found the record to be less than clear. (Op. 13-14) But more to the point, he found such facts to be "peripheral." (*Id.*) That Zappala may have made phone calls to Powell from a landline in New Jersey, for example, may be a part of the story, but it does not lie at the "heart of the lawsuit." (Op. 15:11–14).

The major events underlying this action are connected to Pennsylvania, not New Jersey. As Judge Hammer pointed out, the most important facts and allegations revolve around the negotiation and performance of the buyout agreement. The "majority of operative conduct" regarding those issues occurred in Pennsylvania. According to the complaint itself, the negotiations did not even begin until June 2008. The contract was negotiated in Pennsylvania between a buyer and seller companies who both have their principal places of business there. The dispute primarily arose in Pennsylvania, where performance was to take place. (*Id.* at 15-16) The juvenile detention business was a Pennsylvania business, and the events necessitating the buyout all arose in Pennsylvania.

Powell and Vision's citation to *Mkt. Transition Facility of New Jersey v. Twena,* 941 F. Supp. 462 (D.N.J. 1996), is unpersuasive. There, Judge Chesler found that the defendant, "while in the state of New Jersey, allegedly engaged in fraudulent misrepresentation by stating that he was a *bona fide* New Jersey resident, when applying for a New Jersey automobile liability insurance policy . . . [and that] [t]he application was made to a New Jersey corporation, which was only authorized to issue

---

[2]     To a supplemental letter (ECF No. 48), counsel attach Zappala's objection to a discovery request in a parallel action brought in the Western District of Pennsylvania. In that objection, Zappala states that "most communications" between himself and Powell "occurred by phone." This, say Plaintiffs' counsel, undercuts Zappala's statement in his appellate brief that he communicated by phone "sometimes." Plaintiffs infer that such phone communications occurred in New Jersey. I consider this evidence, but do not find that it justifies reversal.

policies to New Jersey residents." *Id.* at 466. The connections to New Jersey here are not nearly as strong.[3]

*District where claim arose.* Judge Hammer properly found thatteh claims primarily arose in Pennsylvania, and that this factor weighed in favor of transfer. (Op. 11:24–15:14). Plaintiffs' re-citation of cases already explained and distinguished by Judge Hammer is unhelpful, and I agree with Judge Hammer's analysis. (Op. 12:16–13:15; *see Westfield Ins. Co. v. Interline Brands, Inc.*, 2013 WL 6816173 (D.N.J. Dec. 20, 2013); *PCS Wireless, LLC v. Portables Unlimited*, 2013 WL 5797731 (D.N.J. Oct. 28, 2013)). Judge Hammer properly found that "this agreement, the subject of the alleged fraud, was negotiated in Pennsylvania between two Pennsylvania parties." (Op. 15). Those parties, the buyer and seller companies, have their principal places of business in Pennsylvania ,and each was owned by Mr. Powell and Mr. Zappala in equal shares.  Those Pennsylvania contacts weigh in favor of the transfer.

*Convenience.* Judge Hammer found that the only witness residing in New Jersey was Zappala, the very party seeking transfer. Zappala has agreed to waive any post-transfer jurisdictional challenge. (The parties seem to dispute whether two witnesses are beyond this court's 100 mile subpoena "bulge" jurisdiction. *See* Fed. R. Civ. P. 45(c)(1)(A).) (*Id.* at 15–17). Powell and Vision argue that this factor is relevant only "to the extent that the witnesses may *actually* be unavailable for trial in one of the fora," and that "Zappala has not identified *any* witness who would not appear voluntarily to testify at trial before this Court and cannot be compelled to do so." (Pl. Br. 20–21 (citing *Jumara*, 55 F.3d at 879; *Westfield*, 2013 WL 6816173, at *15)). True, Judge Hammer did not have

---

[3]     The defendant's preference to litigate in another district is of course inherent in the very notion of a motion to transfer venue. Judge Hammer did not give undue or incorrect weight to Zappala's preference, which was simply "one [factor] for the Court to consider." (Op. 11).

before him any definitive statement that these witnesses would or would not voluntarily appear. Unlike Judge Hammer, I would tend to view this factor as neutral, because the proofs are inconclusive. It does not, however, change my view of the result.

*Books and records.* The parties agree with Judge Hammer that this factor is neutral. There was no evidence that records could not be produced in either forum. (Op. 17:3–17).

*Public interest factors.* Powell and Vision's argument that Judge Hammer erred in finding that the "local interest" factor favored transfer is not persuasive. As discussed above, that Zappala may have made relevant telephone communications from New Jersey does not override the fact that the "heart of the lawsuit"—including the events leading up to the agreement, the agreement itself, and the performance of the agreement—primarily occurred in Pennsylvania. (Pl. Br. 23; Op. 15:5–14). As Judge Hammer properly noted:

> [The telephone calls] are largely peripheral to the instant matter regarding the claim of fraud involving the purported agreement between Mr. Powell and Mr. Zappala for Mr. Zappala to buy out Mr. Powell's interest in their business. In fact, even if some of the telephone calls occurred with Mr. Zappala located in New Jersey, it is clear that the majority of the operative conduct surrounding the parties purportedly entering into the agreement, took place in Pennsylvania.

(Op. 15:16-24).[4]

*Jurisdiction's familiarity with applicable law.* Judge Hammer concluded that a Pennsylvania forum would provide a surer reading of Pennsylvania law. Powell and Vision argue that, notwithstanding the choice of law provision in the contract, they assert tort claims to which New Jersey law may apply. The fact

---

[4]     Again, I do not overlook the distinction between the fraud causes of action and a breach of contract case. The fact remains that performance, or not, of the terms of the agreement are central to the case.

remains that the claims revolve around the agreement, and that the agreement will almost certainly be construed in accordance with Pennsylvania law. Judge Hammer did not absolutely rule out the possibility of New Jersey law's applying to Plaintiffs' tort claims, but concluded that, "[a]s Pennsylvania likely has a more significant relationship with the plaintiffs' claims, it is likely that Pennsylvania law will apply." (*Id.* 19:17–19). Thus, it was not error for Judge Hammer to consider the transferee court's greater familiarity with Pennsylvania law as one factor weighing in favor of the transfer. (*Id.* 19:20–20:22 (specifically considering this factor in combination with the others).

In sum, I find no clear error of fact, error of law, abuse of discretion, or error of any kind in Judge Hammer's thorough and well-reasoned Opinion, which I affirm and adopt. It is possible to cavil about one factor or another, but the Magistrate Judge's overall weighing of the relevant factors was sound and will be upheld.

## III.  CONCLUSION

Accordingly, based on this Opinion and the reasons expressed by Judge Hammer, and for good cause shown;

**IT IS** this 29th day of December, 2014,

**ORDERED** that Plaintiffs' Appeal of Judge Hammer's Order (ECF No. 45) is **DENIED**.

**Kevin McNulty**
**United States District Judge**